## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ROBERTA SHURE, Individually and On Behalf of All Others Similarly Situated,

          Plaintiff,

    v.

ENERGY TRANSFER PARTNERS, L.P., ENERGY TRANSFER PARTNERS GP, L.P., KELCY L. WARREN, TED COLLINS, JR., MICHAEL K. GRIMM, MARSHALL S. MCCREA, JAMES R. PERRY, MATTHEW S. RAMSEY, DAVID K. SKIDMORE, SUNOCO LOGISTICS PARTNERS L.P., SUNOCO PARTNERS LLC, and ENERGY TRANSFER EQUITY, L.P.,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

JURY TRIAL DEMANDED

CLASS ACTION

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on November 21, 2016 (the "Proposed Transaction"), pursuant to which Energy Transfer Partners, L.P. ("ETP" or the "Partnership") will be acquired by Sunoco Logistics Partners L.P ("SXL").

2.     On November 20, 2016, ETP's Board of Directors (the "Board" or "Individual Defendants") caused the Partnership to enter into an agreement and plan of merger (the "Merger Agreement"), which was amended on December 16, 2016, with SXL, Sunoco Partners LLC ("SXL GP"), Energy Transfer Equity, L.P. ("ETE"), and Energy Transfer Partners GP, L.P.

("ETP GP").  Pursuant to the terms of the Merger Agreement, unitholders of ETP will receive 1.5 common units of SXL for each common unit of ETP.

3.      On December 19, 2016, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of ETP common units.

9.      Defendant ETP is a Delaware limited partnership and maintains its principal executive offices at 8111 Westchester Drive, Suite 600, Dallas, Texas 75225.  ETP's common units traded on the NYSE under the ticker symbol "ETP."

10.     Defendant Kelcy L. Warren ("Warren") is a director, Chairman of the Board, and Chief Executive Officer ("CEO") of ETP.  Warren also serves on ETE's board of directors.

11.     Defendant Ted Collins, Jr. ("Collins") is a director of ETP.  Collins also serves on ETE's board of directors.

12.     Defendant Michael K. Grimm ("Grimm") is a director of ETP.  According to the Partnership's website, Grimm is Chair of the Audit Committee and Chair of the Compensation Committee.

13.     Defendant Marshall S. McCrea ("McCrea") has served as a director of ETP since December 2009.  McCrea also serves on SXL's and ETE's boards of directors.

14.     Defendant James R. Perry ("Perry") is a director of ETP.  According to the Partnership's website, Perry is a member of the Audit Committee.  Perry also serves on SXL's board of directors.

15.     Defendant Matthew S. Ramsey ("Ramsey") is a director of ETP.  Ramsey also serves as Chairman of Sunoco LP's ("SUN") board of directors and serves on ETE's board of directors.

16.     Defendant David K. Skidmore ("Skidmore") is a director of ETP.  According to the Partnership's website, Skidmore is a member of the Audit Committee and the Compensation Committee.

17.     The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18.     Defendant ETP GP is a Delaware limited partnership, the general partner of ETP, and a party to the Merger Agreement.

19.     Defendant SXL is a Delaware limited partnership and a party to the Merger Agreement.

20.     Defendant SXL GP is a Pennsylvania limited liability company, the general partner of SXL, and a party to the Merger Agreement.

21.     Defendant ETE is a Delaware limited partnership and indirect parent entity of ETP, ETP GP, SXL and SXL GP.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action on behalf of herself and the other public unitholders of ETP (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

23.     This action is properly maintainable as a class action.

24.     The Class is so numerous that joinder of all members is impracticable.  As of November 4, 2016, there were approximately 542,668,309 units of ETP common units outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

25.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

26.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the

Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

27.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

28.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Affiliated Parties

29.     As set forth below, ETP, ETE, SXL, SUN, and their respective management teams and boards of directors are all affiliated and intertwined.

**A.     ETP**

30.     ETP is a master limited partnership that owns and operates one of the largest and most diversified portfolios of energy assets in the United States.

31.     ETP's subsidiaries include Panhandle Eastern Pipe Line Company, LP (the successor of Southern Union Company) and Lone Star NGL LLC, which owns and operates natural gas liquids storage, fractionation, and transportation assets.

32.     In total, ETP currently owns and operates approximately 62,500 miles of natural gas and natural gas liquids pipelines.

33.    ETP also owns the general partner, 100% of the incentive distribution rights, and 67.1 million common units of SXL, which operates a portfolio of complementary crude oil, refined products, and natural gas liquids pipeline, terminalling acquisition and marketing assets which are used to facilitate the purchase and sale of crude oil, natural gas liquids, and refined products.

34.    ETP's general partner is owned by ETE.

**B.    ETE**

35.    ETE is a master limited partnership that owns the general partner and 100% of the incentive distribution rights ("IDRs") of ETP and SUN.

36.    ETE also owns approximately 2.6 million ETP common units and approximately 81.0 million ETP Class H Units, which track 90% of the underlying economics of the general partner interest and IDRs of SXL.

37.    On a consolidated basis, the ETE family owns and operates approximately 71,000 miles of natural gas, natural gas liquids, refined products, and crude oil pipelines.

38.    Individual Defendants Warren, Collins, McCrea, and Ramsey serve on ETE's board of directors.

39.    Thomas E. Long ("Long"), ETP's Chief Financial Officer ("CFO"), also serves as CFO of ETE.

**C.    SXL**

40.    SXL is a master limited partnership that owns and operates a logistics business consisting of a portfolio of complementary crude oil, refined products, and natural gas liquids pipeline, terminalling and acquisition and marketing assets which are used to facilitate the purchase and sale of crude oil, natural gas liquids, and refined products.

41.    SXL's general partner is a consolidated subsidiary of ETP.

42.    Individual Defendants McCrea and Perry serve on SXL's board of directors.

**D.    SUN**

43.    SUN is a master limited partnership that operates approximately 1,340 convenience stores and retail fuel sites and distributes motor fuel to convenience stores, independent dealers, commercial customers and distributors located in 30 states at approximately 6,800 sites.

44.    SUN's general partner is owned by ETE.

45.    Individual Defendant Ramsey is Chairman of SUN's board of directors.

46.    Long, ETP's CFO, also serves as a director of SUN.

***The Flawed Process Leading Up to the Merger Agreement***

47.    As set forth in the Registration Statement, the Proposed Transaction is the result of a flawed, single-bidder process during which the Individual Defendants only held discussions and negotiations with the Partnership's affiliate, SXL.

48.    Indeed, as the Registration Statement concedes:

The ETP Conflicts Committee was not authorized to, and did not, conduct an auction process or other solicitation of interest from third parties for the acquisition of ETP. Given ETE's control over ETP's general partner, it was unrealistic to expect or pursue an unsolicited third party acquisition proposal or offer for the assets or control of ETP, and it was unlikely that the ETP Conflicts Committee could conduct a meaningful auction for the acquisition of the assets or control of ETP.

49.    On October 19, 2016, ETE management held a discussion with the ETP Board and the board of directors of LE GP, LLC, the general partner of ETE, regarding the potential merger of ETP and SXL.

50.     On October 31, 2016, Individual Defendant Warren, who is also Chairman of the board of directors of LE GP, LLC, the general partner of ETE, met with Michael J. Hennigan ("Hennigan"), President and CEO of SXL, regarding the potential merger of ETP and SXL.

51.     On November 1, 2016, the ETP Board and ETE board held a joint meeting regarding the potential transaction, and the ETP Board created a so-called "Conflicts Committee" comprised of Individual Defendants Skidmore and Grimm.

52.     On November 11, 2016, Individual Defendant Warren sent a letter to the SXL board, which indicated that "ETE believed that it would be advisable for SXL to consider making a proposal to acquire ETP in an all equity transaction."

53.     On November 18, 2016, SXL submitted a proposal to acquire ETP, pursuant to which ETP common unitholders would receive 1.475 SXL common units for each ETP common unit.

54.     The next day, ETP submitted a counterproposal whereby ETP common unitholders would receive only 1.50 SXL common units for each ETP common unit – the ultimate merger consideration.

55.     On November 20, 2016, the ETP Board held a joint board meeting with the ETE board.  While Individual Defendants McCrea and Perry did not attend the meeting for reasons undisclosed in the Registration Statement, the Board approved the Proposed Transaction, and the parties executed the Merger Agreement that day.

56.     From November 22, 2016 to December 8, 2016, ETP, SXL, and their counsel "had various discussions regarding alternative structures for the proposed transaction, and in particular, the structure of the GP merger."  The Registration Statement fails to disclose the basis for discussing such alternative transaction structures.

57.     On December 16, 2016, the parties entered into an amended Merger Agreement.

***The Preclusive Merger Agreement***

58.     The Board caused the Partnership to enter into the Merger Agreement, pursuant to which ETP will be acquired for inadequate consideration.

59.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.   Section 5.3(a) of the Merger Agreement states:

> ETP shall, and shall cause its Subsidiaries and shall use its reasonable best efforts to cause ETP's and its Subsidiaries' respective directors, officers, employees, investment bankers, financial advisors, attorneys, accountants, agents and other representatives (collectively, "Representatives") to, immediately cease and cause to be terminated any discussions or negotiations with any Person conducted heretofore with respect to an ETP Alternative Proposal, request the return or destruction of all confidential information previously provided to such parties by or on behalf of ETP or its Subsidiaries and immediately prohibit any access by any Person (other than SXL and its Representatives) to any physical or electronic data room relating to a possible ETP Alternative Proposal. Except as permitted by this Section 5.3, (x) without the prior written consent of SXL, ETP shall not, and shall cause its Subsidiaries not to, and use its reasonable best efforts to cause its Representatives not to, directly or indirectly (i) solicit, initiate, knowingly facilitate, knowingly encourage (including by way of furnishing confidential information) or knowingly induce or take any other action intended to lead to any inquiries or any proposals that constitute or could reasonably be expected to lead to an ETP Alternative Proposal, (ii) grant any waiver or release of any standstill or similar agreement with respect to any units of ETP or of any of its Subsidiaries, (iii) enter into any confidentiality agreement, merger agreement, letter of intent, agreement in principle, unit purchase agreement, asset purchase agreement or unit exchange agreement, option agreement or other similar agreement relating to an ETP Alternative Proposal (an "ETP Acquisition Agreement"), or (iv) withdraw, modify or qualify, or propose publicly to withdraw, modify or qualify, in a manner adverse to SXL, the ETP Board Recommendation or publicly recommend the approval or adoption of, or publicly approve or adopt, or propose to publicly recommend, approve or adopt, any ETP Alternative Proposal, or fail to

recommend against acceptance of any tender offer or exchange offer for ETP Units within ten (10) business days after commencement of such offer, or resolving or agreeing to take any of the foregoing actions, and (y) subject to Section 5.3(b), within five business days of receipt of a written request of SXL following the receipt by ETP of any ETP Alternative Proposal, ETP shall publicly reconfirm the ETP Board Recommendation; provided, that, in the event that SXL requests such public reconfirmation of the ETP Board Recommendation, then ETP may not unreasonably withhold, delay (beyond the five business day period) or condition the public reconfirmation of the ETP Board Recommendation and provided, further, that SXL shall not be permitted to make such request on more than one occasion in respect of each ETP Alternative Proposal and each material modification to an ETP Alternative Proposal, if any (the taking of any action described in clause (x)(iii) or the failure to take the action described in clause (y) being referred to as an "ETP Adverse Recommendation Change"). Without limiting the foregoing, it is understood that any violation of the foregoing restrictions by ETP's Subsidiaries or Representatives shall be deemed to be a breach of this Section 5.3 by ETP unless such violation is committed without the Knowledge of ETP and ETP uses its reasonable best efforts to promptly cure such violation once ETP is made aware of such violation.

60.     Further, the Partnership must advise SXL, within twenty-four hours, of any proposals or inquiries received from other parties.  Section 5.3(c) of the Merger Agreement states:

In addition to the other obligations of ETP set forth in this Section 5.3, ETP shall promptly advise SXL, orally and in writing, and in no event later than 24 hours after receipt, if any proposal, offer, inquiry or other contact is received by, any information is requested from, or any discussions or negotiations are sought to be initiated or continued with, ETP in respect of any ETP Alternative Proposal, and shall, in any such notice to SXL, indicate the identity of the Person making such proposal, offer, inquiry or other contact and the terms and conditions of any proposals or offers or the nature of any inquiries or contacts (and shall include with such notice copies of any written materials received from or on behalf of such Person relating to such proposal, offer, inquiry or request), and thereafter shall promptly keep SXL reasonably informed of all material developments affecting the status and terms of any such proposals, offers, inquiries or requests (and ETP shall promptly provide SXL with copies of any additional written materials received by ETP or that ETP has delivered to any third party making an ETP Alternative Proposal that relate to such proposals, offers, inquiries or requests) and of the status of any such discussions or negotiations.

61.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under

extremely limited circumstances, and grants SXL a "matching right" with respect to any "Superior Proposal" made to the Partnership. Section 5.3(d) of the Merger Agreement provides, in relevant part:

> Notwithstanding any other provision of this Agreement, at any time prior to obtaining the ETP Unitholder Approval, the ETP Managing GP Board and the ETP Conflicts Committee may effect an ETP Adverse Recommendation Change in response to an ETP Alternative Proposal or an ETP Changed Circumstance if the ETP Managing GP Board (upon the recommendation of the ETP Conflicts Committee), after consultation with its outside legal counsel and financial advisors, determines in good faith that the failure to take such action would be inconsistent with its duties under the ETP Partnership Agreement or applicable Law and:
>
> (i) if the ETP Managing GP Board (upon the recommendation of the ETP Conflicts Committee) intends to effect such ETP Adverse Recommendation Change in response to an ETP Alternative Proposal:
>
> A. such ETP Alternative Proposal is bona fide, in writing and has not been withdrawn or abandoned;
>
> B. the ETP Managing GP Board (upon the recommendation of the ETP Conflicts Committee) has determined, after consultation with its outside legal counsel and financial advisors, that such ETP Alternative Proposal constitutes an ETP Superior Proposal after giving effect to all of the adjustments offered by SXL pursuant to clause (E) below;
>
> C. ETP has provided prior written notice to SXL in accordance with Section  8.9 (the "ETP Superior Proposal Notice") of the ETP Managing GP Board's intention to effect an ETP Adverse Recommendation Change, and such ETP Superior Proposal Notice has specified the identity of the Person making such ETP Alternative Proposal, the material terms and conditions of such ETP Alternative Proposal, and complete copies of any written proposal or offers (including proposed agreements) received by ETP in connection with such ETP Alternative Proposal;
>
> D. during the period that commences on the date of delivery of the ETP Superior Proposal Notice as determined in accordance with Section  8.9 and ends at 11:59 p.m. Central time on the date that is the fifth calendar day following the date of such delivery (the "ETP Superior Proposal Notice Period"), ETP shall (1) negotiate with SXL in good faith to make such adjustments to the terms and conditions of this Agreement as would permit the ETP Managing GP Board not to effect an ETP Adverse Recommendation Change; and (2) keep SXL reasonably informed with respect to the status and changes in the material terms and

conditions of such ETP Alternative Proposal or other change in circumstances related thereto; provided, however, that any material revisions to such ETP Alternative Proposal (it being agreed that any change in the purchase price in such ETP Alternative Proposal shall be deemed a material revision) shall require delivery of a subsequent ETP Superior Proposal Notice and a subsequent ETP Superior Proposal Notice Period in respect of such revised ETP Alternative Proposal, except that such subsequent ETP Superior Proposal Notice Period shall expire upon the later of (x) the end of the initial ETP Superior Proposal Notice Period and (y) 11:59 p.m. Central time on the date that is the third calendar day following the date of the delivery of such subsequent ETP Superior Proposal Notice; and

E. the ETP Managing GP Board shall have considered all revisions to the terms of this Agreement irrevocably offered in writing by SXL and, at the end of the ETP Superior Proposal Notice Period, shall have determined in good faith that (i) such ETP Alternative Proposal continues to constitute an ETP Superior Proposal even if such revisions were to be given effect and (ii) failure to effect an ETP Adverse Recommendation Change would be inconsistent with its duties under the ETP Partnership Agreement or applicable Law even if such revisions were to be given effect[.]

62.     Further locking up control of the Partnership in favor of SXL, the Merger Agreement provides for a "termination fee" of $630 million, payable by the Partnership to SXL if the Individual Defendants cause the Partnership to terminate the Merger Agreement.

63.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Partnership.

64.     Additionally, Section 3.3(c) of the Merger Agreement only requires the following unitholder approval for the Proposed Transaction, as opposed to requiring that a majority of the unaffiliated unitholders approve the deal, and ETE has agreed that it will vote its limited partner interests in ETP in favor of approval of the Proposed Transaction.  Section 3.3(c) of the Merger Agreement provides:

The affirmative vote or consent of the holders of a Unit Majority at the ETP Unitholders Meeting or any adjournment or postponement thereof in favor of the adoption of this Agreement and the transactions contemplated hereby (the  ETP

Unitholder Approval") is the only vote or approval of the holders of any class or series of ETP Partnership Interests or other partnership interests, equity interests or capital stock of ETP or any of its Subsidiaries which is necessary to adopt this Agreement and the transactions contemplated hereby.

65.     Indeed, according to a November 21, 2016 *Seeking Alpha* article titled "Sunoco Logistics Partners Has Advantage In Merger With Energy Transfer Partners," "[t]he merger is likely to go through because ETE, the parent company of both SXL and ETP, will be controlling the merger votes."

***The Inadequate Merger Consideration and Interests of the Partnership's Officers and Directors***

66.     The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

67.     Among other things, the intrinsic value of the Partnership is materially in excess of the amount offered in the Proposed Transaction.

68.     The November 21, 2016 *Seeking Alpha* article titled "Sunoco Logistics Partners Has Advantage In Merger With Energy Transfer Partners" states that "*the deal favors SXL shareholders and puts ETP shareholders at a disadvantage*." (Emphasis added). The article further states that, "[e]ffectively, *ETP shareholders are not receiving any premium* based on the closing prices of the prior day." (Emphasis added). Additionally, "*ETP shareholders will see a dividend cut by about 30%. . . . ETP shareholders are at a disadvantage as they will see a dividend cut*." (Emphasis added).

69.     Similarly, a November 21, 2016 *Forbes* article titled "Is There Value In Sunoco Logistics' Merger With Energy Transfer Partners?" states that the merger consideration values ETP "lower than its $39.37 closing price this past Friday (the entities say the price represents a 10% premium over the target's average closing price over the last 30 days)." The article

continues:  "Investors don't think much of Sunoco Logistics Partners LP (NYSE:SXL)'s $20 billion purchase of affiliate Energy Transfer Partners LP (NYSE:ETP), and with good reason."

70.     The merger consideration also fails to adequately compensate the Partnership's unitholders for the significant synergies that will result from the Proposed Transaction.

71.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Partnership's valuable and profitable business, and future growth in profits and earnings.

72.     Meanwhile, the Partnership's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction, and suffered from conflicts of interest due to their loyalties to ETP, ETE, *and* SXL.  Indeed, as the Registration Statement provides, "ETP's directors and executive officers have interests in the merger that are different from, or in addition to, the interests of ETP unitholders generally," including the fact that "[c]ertain members of the ETP Board are also members of the ETE board of directors and/or the SXL Board and are executives of ETE and/or ETP."

73.     Following the close of the merger:  (i) Individual Defendant Warren will become CEO of SXL; (ii) Individual Defendant McCrea will become Chief Commercial Officer of SXL; (iii) Individual Defendant Ramsey will become the President of SXL; and (iv) Long, CFO of ETP, will become CFO of SXL.

74.     Moreover, the ETP Board members will serve as members of the post-merger ETP Board.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

75.     Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

76.     The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

77.     *First*, the Registration Statement omits material information regarding potential conflicts of interest of the Partnership's officers and directors.

78.     Following the consummation of the Proposed Transaction, Individual Defendant Warren will become CEO of SXL; Individual Defendant McCrea will become Chief Commercial Officer of SXL; Individual Defendant Ramsey will become the President of SXL; and Long will become CFO of SXL.  Additionally, the ETP Board members will serve as members of the post-merger ETP Board.

79.     However, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of ETP's officers and directors, including who participated in all such communications.

80.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to unitholders.  This information is necessary for unitholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Partnership's unitholders.

81.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the ETP Board; Reasons for the Merger"; (iii) "Interests of Directors and Executive Officers of ETP in the Merger.

82.     *Second*, the Registration Statement omits material information regarding the Partnership's (and SXL's) financial projections.

83.     For example, with respect to ETP's projections, the Registration Statement fails to disclose, *inter alia*:   (i) a reconciliation of GAAP to non-GAAP metrics; (ii) stock-based compensation; (iii) the diluted units outstanding, as used in Barclays' analyses; (iv) "cash available to pay a unit's distribution expense," including a definition of the term; (v) expected synergies, as used in Barclays' analyses; (vi) revenues; (vii) income; (viii) net income; and (ix) expenses.

84.     The Registration Statement further fails to disclose whether the 15%-25% reduction in distributable cash flow applied uniformly over the three-year projection horizon, or whether specific reductions were applied in specific years; if it was the latter, the Registration Statement must disclose the year-by-year reductions and explain the reasons different reductions were applied in different years.   The Registration Statement similarly fails to disclose the basis for such reductions.

85.     The disclosure of projected financial information is material because it provides unitholders with a basis to project the future financial performance of a company, and allows unitholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

86.     In the same regard, the Registration Statement fails to disclose all projected line items for SXL, including, but not limited to:   (i) revenues; (ii) income; (iii) net income; and (iv) expenses.

87.     This information is material, as the Partnership's unitholders are receiving SXL stock in connection with the Proposed Transaction.

88.     Additionally, the Registration Statement fails to disclose the schedule of the incentive distribution subsidies provided by, and projected to be provided by, ETE to each of ETP and SXL.

89.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the ETP Board; Reasons for the Merger"; (iii) "Opinion of the Financial Advisor to the ETP Conflicts Committee"; (iv) "Unaudited Financial Projections of ETP"; and (v) "Unaudited Financial Projections of SXL."

90.     *Third*, the Registration Statement omits material information regarding the financial analyses performed by Barclays in support of its so-called fairness opinion.

91.     For example, with respect to Barclays' *Discounted Distributable Cash Flow Analyses*, the Registration Statement fails to disclose:  (i) the definition and formula for distributable cash flows used by Barclays; (ii) the bases for the 1.1x coverage ratio assumption and hypothetical reductions in distributions; (iii) all assumptions underlying Barclays' estimate of ETP's cost of equity, as well as the basis for each assumption; (iv) the reasons Barclays deemed different terminal yields appropriate for ETP based on which projection scenario was being used; (v) the implied perpetuity growth rates for ETP corresponding to the assumed terminal yields; (vi) all assumptions underlying Barclays' estimate of SXL's cost of equity, as well as the basis for each assumption; (vii) the implied perpetuity growth rates for SXL corresponding to the assumed terminal yields; (viii) the reasons Barclays deemed it appropriate to base its terminal yields on the observed yields of the publicly traded peer companies given that the observed peer-company yields were forward yields (2017E and 2018E), whereas Barclays calculated ETP's terminal value using yields on a trailing basis; (ix) the discount rates applied to

the ETP Status Quo Case and ETP Distribution Reduction Case, and whether the discount rates were applied to estimated distributable cash flows and terminal values; and (x) the net present value date used for ETP.

92.     With respect to Barclays' *Selected Comparable Company Analysis*, the Registration Statement fails to disclose:  (i) an explanation of the following statement:  "None of the MLPs that were selected for such purpose were subsequently excluded in conducting this analysis"; (ii) the observed company-by-company pricing multiples and financial metrics examined by Barclays; (iii) Barclays' basis for selecting different peer groups for ETP and SXL; and (iv) whether Barclays examined LTM yields.

93.     With respect to Barclays' *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose:  (i) the objective selection criteria and the observed transaction-by-transaction enterprise values, pricing multiples, transaction premiums, and financial metrics; (ii) the reasons EBITDA was chosen as the sole pricing multiple, while it was not used elsewhere in Barclays' analyses; (iii) the "differences between the characteristics" between this transaction and the precedent transactions perceived by Barclays, and how Barclays quantified the valuation impact of such differences; and (iv) the pricing multiples selected by Barclays for this analysis.

94.     With respect to Barclays' *Analysis of Equity Research Analyst Price Targets*, the Registration Statement fails to disclose:  (i) the overall number of price targets examined and detail each that was above the offer price; (ii) the source of the price targets; and (iii) the dates the price targets were issued.

95.     With respect to Barclays' *Pro Forma Merger Consequences Analysis*, the Registration Statement fails to:  (i) quantify the EBITDA and cash distributions from less-than-

wholly-owned subsidiaries; (ii) disclose the implied exchange ratios based on the Status Quo Case and how they differ from Barclays' other analyses; (iii) disclose discounted cash flow figures used in the analysis and underlying inputs and assumptions; and (iv) disclose the projected value of the post-close units.

96.     Additionally, the "Summary of Analyses" section of the Registration Statement fails to provide a valuation summary detailing the calculation of fully diluted shares, equity value (at the unaffected price and the offer), and enterprise value (at the unaffected price and the offer). If pricing multiples were calculated, that information must be disclosed as well.

97.     When a banker's endorsement of the fairness of a transaction is touted to unitholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

98.     The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the ETP Board; Reasons for the Merger"; and (iii) "Opinion of the Financial Advisor to the ETP Conflicts Committee."

99.     *Fourth*, the Registration Statement omits material information regarding potential conflicts of interest of Barclays.

100.    Specifically, the Registration Statement fails to fairly disclose Barclays' ties to the parties to the Merger Agreement, including that Barclays is a large holder of SXL units as well as ETE units.

101.    Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

102.    The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; (ii) "Recommendation of the ETP Board; Reasons for the Merger"; and (iii) "Opinion of the Financial Advisor to the ETP Conflicts Committee."

103.    *Fifth*, the Registration Statement omits material information regarding the background of the Proposed Transaction.  The Partnership's unitholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

104.    For example, the Registration Statement fails to disclose whether any parties contacted ETP regarding interest in a potential transaction during (or preceding) the process leading up to the Merger Agreement.

105.    The Registration Statement fails to disclose the reasons Individual Defendants McCrea and Perry failed to attend the Board meeting during which the Board approved the Proposed Transaction.

106.    The Registration Statement further fails to disclose the reasons that, from November 22, 2016 to December 8, 2016, ETP, SXL, and their counsel "had various discussions regarding alternative structures for the proposed transaction, and in particular, the structure of the GP merger," and ultimately entered into the amended Merger Agreement.

107.    The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement:  (i) "Background of the Merger"; and (ii) "Recommendation of the ETP Board; Reasons for the Merger."

108.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to ETP's unitholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and ETP**

109.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

110.    The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  ETP is liable as the issuer of these statements.

111.    The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Partnership, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

112.    The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

113.    The omissions and false and misleading statements in the Registration Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to unitholders.

114.    The Registration Statement is an essential link in causing plaintiff and the Partnership's unitholders to approve the Proposed Transaction.

115.    By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

116.    Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and SXL

117.    Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

118.    The Individual Defendants and SXL acted as controlling persons of ETP within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of ETP and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

119.    Each of the Individual Defendants and SXL was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

120.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Registration Statement contains the unanimous

recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly in the making of the Registration Statement.

121.    SXL also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

122.    By virtue of the foregoing, the Individual Defendants and SXL violated Section 20(a) of the 1934 Act.

123.    As set forth above, the Individual Defendants and SXL had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.    Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

      E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

      F.     Granting such other and further relief as this Court may deem just and proper.

### **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 13, 2017

OF COUNSEL:

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
Gregory M. Nespole
Benjamin Y. Kaufman
Correy A. Kamin
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
nespole@whafh.com
kaufman@whafh.com
kamin@whafh.com

**RIGRODSKY & LONG, P.A.**

By:  */s/ Brian D. Long*
     Seth D. Rigrodsky (#3147)
     Brian D. Long (#4347)
     Gina M. Serra (#5387)
     2 Righter Parkway, Suite 120
     Wilmington, DE 19803
     Tel.: (302) 295-5310
     Fax: (302) 654-7530
     sdr@rl-legal.com
     bdl@rl-legal.com
     gms@rl-legal.com

     *Attorneys for Plaintiff*